MOBILE & GIRARD RAILROAD CO. *vs.* PREWITT.

[ACTION AGAINST COMMON CARRIER FOR FAILURE TO DELIVER GOODS.]

1. *Railroad companies are common carriers.*—A railroad company in this State is a common carrier, and whilst the goods are in *transitu* it is liable to all the responsibilities of common carriers.

2. *Same ; when liability of, as common carrier, ceases.*—But where the bill of lading shows that the goods transported were shipped to the owner as consignee, " care of the railroad company," to be delivered at a station on the railroad, if the goods are transported with the usual expedition, and the owner or his agent is not at the depot designated for the delivery at the time the goods arrive, ready to receive them, the goods may be deposited in the warehouse of the company, and from such deposit the liability of the company as common carrier ceases.

3. *Same; when responsible as warehouseman for hire.*—Goods so deposited must be kept by the company under the responsibility of warehousemen for hire, whether actual storage be charged or not, and the company must act without fraud or bad faith.

4. *Same ; when charge that carrier is liable only for loss occasioned by gross negligence, is correct.*—In a suit for damages for loss of the goods in such a case, if there are two counts in the complaint, the one on a contract of common carriers, and the other on a contract of a warehouseman without hire, a charge asked by the defendant under the latter count, that the company is only responsible for losses and injuries occasioned by gross negligence, is proper, and should be given.

APPEAL from Circuit Court of Bullock.
Tried before Hon. J. McCALEB WILEY.

The facts are sufficiently stated in the opinion.

RICE, SEMPLE & GOLDTHWAITE, for appellant.
J. N. ARRINGTON, and STONE, CLOPTON & CLANTON, *contra.*

PETERS, J.—This is an action for damages instituted by the appellee against the appellant as a common carrier. There are two counts in the complaint, which are as follows :

" The plaintiff claims of the defendant, a corporate body, two hundred and eighty-three dollars and fifteen cents, as damages for the failure to deliver certain goods, namely, two boxes of merchandise, containing sundry ar-

ticles of dry goods, received by said Mobile & Girard railroad company as a common carrier, to be delivered to the plaintiff at station No. 6 on said railroad, for a reward, which he failed to do.

"And the plaintiff claims of the defendant, a corporate body, five hundred dollars as damages, for that heretofore, to-wit, on the 20th day of October, 1869, (?) the said defendant, at his special request and instance, had the care of certain other goods and chattels, to-wit, two boxes of merchandise, containing sundry articles of dry goods, the property of the plaintiff, and thereupon it then and there became and was the duty of the said defendant, whilst he so had the care of the said goods and chattels, to take due and proper care thereof; yet the said defendant, not regarding his duty in that behalf, did not nor would, whilst he so had the care of the said last mentioned goods and chattels, take due and proper care of the same, but wholly neglected to do so, and took such bad care thereof that afterwards, to-wit, on the twentieth day of October, 1869,(?) became and were greatly damaged and injured, and wholly lost to the said plaintiff, to the damage of the plaintiff as aforesaid."

To this complaint the defendant pleaded " not guilty, in short by consent, with leave to give in evidence anything which, if specially pleaded, would constitute a bar to the action." And the plaintiff joined in issue, " with like leave to give in evidence anything which, if specially replied, would be a good replication."

Upon this issue the parties went to trial by a jury. There was a verdict for the plaintiff for three hundred and fifty-five dollars and sixty-five cents. And a judgment for this sum was rendered, and for costs. From this judgment the defendant in the court below brings the cause by appeal to this court.

On the trial in the court below, the defendant in that court took a bill of exceptions. From this, it appears that the plaintiff below introduced evidence tending to show that he had purchased in the city of New York the articles and goods referred to in the complaint; that said goods

were "billed" to plaintiff at an aggregate cost of two hundred and eighty-two dollars and sixty-five cents; that this purchase was made on September 28th, 1868; that the goods were properly put up in separate packages and shipped on September 29th, 1868, to the plaintiff at Midway, Alabama, *via* Savannah, Georgia, care of defendant, and to be delivered to plaintiff at defendant's station No. 6, as shown by the bill of lading. In this bill of lading are the following stipulations:

"And it is further expressly stipulated, that in case any claim shall arise from any damage or injury to the articles mentioned in this bill of lading while in *transitu*, and *before* delivery, the extent of such damage or injury shall be adjudged in the presence of an officer of the railroad, before the same (is) removed from the station. And the amount of such claim, when so ascertained, shall (be) preferred at the office of the chief of transportation of the road which shall have delivered the goods, within ten days after such delivery. And in case such claim, whatever it may be, shall not be preferred within the time and at the place hereinbefore designated, such loss or damage shall be held to be waived. And it is further stipulated, that in all cases of loss of such goods or merchandise, the amount of claim and damages shall be restricted to the cash value of such goods or merchandise at the port of departure at the time of shipment, and shall be presented as above, within ten days after the proper time for their delivery in due course; and that all claims for partial loss or damage shall be ascertained and adjusted upon the same basis of value."

It was shown in connection with this bill of lading, that the goods sued for reached said station No. 6 at about three o'clock P. M. on the 10th day of October, 1868, and were ready for delivery in about one half of an hour thereafter. No one was there ready to receive them, and they were stored in the warehouse of the railroad company at that station, and carefully kept without hire for delivery to the owner when called for. On the morning of the 17th day of October, 1868, the warehouse aforesaid was accidentally burned, and two boxes of the goods mentioned in

the bill of lading were destroyed by the fire, in spite of every effort made by the servants and agents of the said railroad company to prevent it. The goods were not called for until after the burning, and that portion which had been burned up and destroyed could not be delivered. The transportation of such goods on the railroad was for hire. It was shown by the defendant that the goods had been diligently and carefully kept by the agents of the company, in said warehouse, until they had been destroyed by said burning, on the night of the 17th day of October, 1868, as above said. It was also shown that the plaintiff had been in the habit of having goods sent to said station No. 6, and receiving them there, for some several years; that it took goods shipped from New York city to said station about ten or twelve days to reach said station; and that the warehouse there was a good, secure, substantial building, and was burned without any fault of said railroad company or its agents. It was also shown that said plaintiff resided about twenty miles away from said station No. 6 on said railroad. This was the substance of the testimony given. On this testimony the court gave a number of charges, some for the plaintiff and some for the defendant. But it is only necessary to notice those which were excepted to by the defendant, and those which were asked by the defendant and refused by the court. These charges were all asked in writing.

The first charge asked by the plaintiff and given by the court, and excepted to by defendant, was in these words: "If the jury believe from the evidence that the defendant was a common carrier, and as a common carrier received the goods of the plaintiff described in the complaint, to be delivered to plaintiff at their point of destination for a reward; that the goods arrived at their point of destination; and that after said arrival there they were destroyed by fire, then the defendant is responsible as a common carrier, that is, an insurer against all losses, except those caused by the acts of God or the public enemy." This charge was excepted to by the defendant. The defendant, among other charges which were given, asked the follow-

Mobile & Girard Railroad Co. v. Prewitt.

ing, which were refused : 7. "That upon the second count, the defendant can only be made liable for gross neglect." 8. "That if the jury believe from the evidence that the goods sued for did reach their destination, and were deposited in the warehouse or depot of defendant, and were made ready for delivery, then the liability of defendant as common carrier ceased, and the liability of defendant as a bailee without hire began, provided defendant did not charge storage on said goods." 9. "That the liability of a bailee without hire is only for gross negligence."

Railroad companies in this State are common carriers, and so long as they are engaged in the office of common carriers their liabilities require the utmost strictness in the performance of their duties.—*Selma & Meridian Railroad Co. v. Butts & Foster*, 43 Ala. 385 ; *Mobile & Ohio Railroad Co. v. Hopkins*, 41 Ala. 486 ; 2 Redf. Law of Railw. 9, § 152. Then, one of the chief questions in this case is, when do the extraordinary liabilities of railroad companies as common carriers end ? It has been very well said by this court, in a carefully considered opinion, that "it must be remembered, that in contracts for the carriage of goods, the obligation is not all on one side. It is as much a part of the contract that the owner or consignee shall be ready at the place of destination to receive the goods when they arrive, or within a reasonable time thereafter, as that the carrier shall transport and deliver them." And, "If goods transported by railroad are not called for by the consignee when they arrive at their destination, and are then deposited in the warehouse of the company without additional charge, until the owner or consignee has a reasonable time, by the exercise of proper diligence, to remove them, the liability of the company as carriers is at an end. And if after this, the goods remain in their warehouse, they are responsible only as keepers for hire."—*Ala. & Tenn. Rivers Railroad Co. v. Kidd*, 35 Ala. 209. This opinion was announced in 1859, now about twelve years ago. And subsequent experience has not shown that the principles upon which it was made to rest have proved to be unsafe or unjust. In this case, the goods were consigned to the owner,

"care M. & G. R. R.," and a place was appointed for their delivery. This is the contract of transportation. The letters above named can only mean the Mobile & Girard railroad. To deliver the goods to the owner, or according to his direction, was sufficient to put an end to the contract of transportation, which also would put an end to the liability of the railroad company as common carriers. Story Bailm. § 509; 1 Pars. Cont. p. 743, bottom. Here, then, there was a delivery as the owner had directed; that is, to the railroad company itself, or to its agents, which was the same thing. This delivery was sufficient to put an end to their contract as common carriers. In this view of the law, the first charge above quoted was incorrect.

When the railroad company thus undertakes to receive and keep the goods for the owner, it is an assumption of control that can not be treated as a mere bailment without hire. For it can not be in justice said that such a bailment is without hire, though no charges for storage are demanded. The accommodation itself is one that has a strong tendency to bring business to the company, because goods transported by them thus find a safe deposit until they can be removed by the owner. Thus, too, the company is paid for the use of its depots by the increase of its business. And when they assume thus to act as warehousemen for their customers, they must be treated as warehousemen for hire. And as the warehouse system in connection with the great business of transportation is a powerful inducement to increase the amount and value of the transportation itself, they must be regarded as warehousemen demanding and receiving a very liberal reward. They are therefore bound to use ordinary diligence in keeping the goods deposited in their station-houses or depots; and also to act without fraud or bad faith.—Story Bailm. §§ 3, 62; 1 Pars. Cont. 700, bottom.

But the second count of the plaintiff's complaint is a count on a contract of bailment as a warehouseman without hire.—2 Chitty on Pl. Such a contract imposes on the bailee a liability for gross negligence only, as the bailment is for the benefit of the bailor alone.—1 Pars. Cont.

pp. 649, 650, bottom ; Story Bailm. §§ 3, 62. The court then, ought to have given the 7th, 8th and 9th charges; asked by the defendant, as above set out, under the form of pleading adopted in this case.

The judgment of the court below is reversed, and the cause is remanded for a new trial.