ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* TOWNES.

Opinion delivered January 24, 1910.

1. CARRIERS—FAILURE TO GIVE NOTICE OF ARRIVAL OF FREIGHT.—Before a consignee can complain of the failure of the carrier to give notice

on the arrival of freight at a distant town, he must have put himself in position to receive such notice; and when he fails to do so, he will be held to have agreed impliedly that the carrier shall hold the goods until the bills of lading are presented by some one.    (Page 433.)

2.  Same—Damage to freight by delay—Evidence.—Where a consignee sued the carrier to recover demurrage charges paid by him and damages to the freight on account of delay caused by failure of the carrier to notify him of the refusal of his vendee to receive the freight, a verdict for a lump sum will be set aside if the evidence fails to show the condition of the freight at the time it was shipped. (Page 434.)

3.  Appeal and error—omission of evidence from transcript—presumption.—The presumption that the judgment of the trial court was correct will not be indulged, because some documents introduced at the trial were omitted by the clerk in making up the transcript, if it appears that they do not concern the points to be decided in disposing of the case.    (Page 434.)

Appeal from Clark Circuit Court; *Jacob M. Carter,* Judge; reversed.

*Kinsworthy & Rhoton* and *James H. Stevenson,* for apellant.

The cars were consigned to shipper's order, notify J. M. Townes, at Texarkana.  Appellee was not at Texarkana during the period complained of, and had no agent there to receive notice. A direction to notify him at Texarkana would not require appellant to notify him at Little Rock.  Hutchinson on Carr. § § 709, 723.

*B. S. & J. V. Johnson,* for appellee.

1.  This court will not review and pass upon the correctness of a jury's verdict where a material part of the evidence heard by them is omitted from the transcript.  The record is also fatally defective in that the trial judge's certificate does not show that the bill of exceptions contains all the evidence, instructions given and refused, and all of the proceedings had in court at the trial of the cause.  74 Ark. 553; 75 Ark. 82.

2.  Appellant is liable for its delay in giving notice of the arrival of the cars at Texarkana.  Acts 1907, p. 453, § § 3, 8, 14, 15 and 21.  See also 77 Ark. 482; Hutchinson on Car. § § 328, 330, 359.

McCulloch, C. J.  This is an action instituted by the plaintiff, J. M. Townes, against the St. Louis, Iron Mountain & Southern Railway Company to recover damages for alleged

breaches of contracts of carriage of numerous carloads of oats and a carload of bran. All except four carloads were shipments from points in Nebraska and Missouri to Texarkana, Arkansas, and the four were shipments from Texarkana to Arkadelphia, Ark. The consignments to Texarkana were purchases made by the plaintiff and shipped by his vendors to the shipper's own order, the bills of lading containing directions to "notify J. M. Townes, Texarkana, Ark." Plaintiff resided in Little Rock, and was engaged here in business. He had no place of business nor agent at Texarkana. The bills of lading were sent to a bank in Little Rock, attached to drafts of the several vendors on the plaintiff for the purchase price of the products sold. These purchases and consignments were not all made at the same time, but were scattered through the months of September and October, 1907.

As soon as the drafts reached Little Rock, which was usually a day or two after he received the invoices from his vendors, and before the consignments had time to reach Texarkana, plaintiff resold the produce to the Josey Grain Company of Texarkana, and at his request the bank at Little Rock forwarded to a bank at Texarkana his drafts on the Josey Grain Company for the purchase price, with the bills of lading attached. In the ordinary course of transportation, it usually required ten or eleven days for the cars to reach Texarkana after shipment, and there is no evidence that the cars were not promptly transported to said destination. When they reached there, the agent of the railway company promptly notified the Josey Grain Company of their arrival. Mr. Josey, of the Josey Grain Company, testified that he in turn notified the plaintiff. Plaintiff denied this, however, and the testimony on this point is conflicting. No notice was given directly by the railroad company to plaintiff. The Josey Grain Company declined to receive the shipment, on account of stringency of money matters and dullness of the grain market at that time. The cars remained in the railroad yards at Texarkana, and plaintiff testified that the first intimation he had of the arrival of the cars was on November 23, when he discovered the fact by accident from the company's claim agent at Little Rock. He made no inquiry for the cars, he says, and was not in Texarkana during that period, and neither gave directions to the company for the forwarding of notice to him of

the arrival of the cars, nor made any arrangements with any one in Texarkana to receive notice for him, further than to forward the bills of lading to the bank attached to the drafts on the Josey Grain Company, which authorized the latter to take up the draft and bills of lading and receive the cars.

Plaintiff claims the right to recover damages on account of the company's failure to notify him of the arrival of the cars, and he attempted to prove damages by reason of loss in weights and depreciation in prices during the delay.

It seems clear to us that on this state of facts the plaintiff is not entitled to recover. As the company was required by the terms of the contract to give him notice of the arrival of the cars at Texarkana, there was a corresponding duty devolving on him to put himself in position to receive the notice, so that the same would be available. Any attempt to give him notice at Texarkana would have proved fruitless, for he was not there to receive it; and before he can complain of the failure of the company to comply with the contract by giving him the notice, he must have first performed the contract impliedly imposed on him to put himself in position to receive the notice. He can not complain when he has failed to perform his part of the contract, for when he failed to make arrangements for the carrier to give him notice, he impliedly agreed for the latter to hold the goods until the bills of lading were presented by some one. This is what the law required the carrier to do, and he could expect nothing more.

"It is the duty of the consignee," says Mr. Hutchinson, "to be on hand and ready to receive the goods. He cannot absent himself, and thus put it out of the power of the carrier to make a delivery to him, and hold him during his absence to the extraordinary care of the goods required of the carrier. If, therefore, he be absent when the carrier is ready to deliver the goods, and has left no agent known to the carrier to whom delivery can be made for him, or to whom notice can be given of their arrival, the carrier becomes at once a mere warehouseman of the goods." 2 Hutchinson on Carriers, § 723.

The Supreme Court of Indiana, speaking on this subject, said: "The doctrine that the carrier's duty to deliver and the consignee's duty to receive are reciprocal, and that each must be

maintained, is approved by the plainest considerations of justice, and is necessary to prevent wrong and imposition." *Adams Exp. Co.* v. *Darnell,* 31 Ind. 20.

The above quotations are taken from discussions of the general question as to when liability as a carrier ceases and that of a warehouseman begins; but the principle is the same in determining the question of liability of the carrier for failing to give notice where damages are alleged to have resulted from such delay.

The four carloads of oats consigned to Arkadelphia were shipped by plaintiff to his own order with directions to notify Arkadelphia Roller Mills, to whom plaintiff had sold the oats; and that company was duly notified of the arrival of the cars, but refused to receive the oats on account of finding them to be in a damaged condition. Plaintiff was not promptly notified of the refusal of the Arkadelphia Roller Mills to accept these cars, and he sues to recover demurrage charges during the period of delay, which he was required to pay, and also alleged damage to the oats. The evidence on this branch of the case is not sufficient to show the condition the oats were in when they were shipped, so it was impossible for the jury to determine how much was the damage, if any, caused by the delay. We cannot determine from the verdict how much the jury allowed for this.

Counsel for plaintiff insist that the bill of exceptions does not contain all the evidence, and that for that reason we should indulge the presumption that the judgment is correct and affirm it. The trial judge certifies in the bill of exceptions that it contains all the evidence, but the clerk, in making up the transcript, omits some of the writings which were read in evidence and called for in the bill of exceptions. These omitted writings consisted of orders of the Railroad Commission and matters of correspondence after the alleged damage occurred, and during the period of attempted adjustment, and none of them affect the question of appellant's liability so far as concerns the points necessary to decide in disposing of the case here. The contents of those writings could not affect those questions, so we can not indulge the presumption that they contained evidence sufficient to establish liability of appellant. *North State Fire Ins. Co.* v.

*Dillard,* 88 Ark. 473; *Wadley* v. *Leggett,* 82 Ark. 262. Other questions raised in the case need not be decided.

Reversed.and remanded for new trial.