### GULF, C. & S. F. RY. CO. v. PATTEN MFG. CO.

(Court of Civil Appeals of Texas. Galveston. Dec. 6, 1912.)

1. CARRIERS (§ 197*)—SALE OF UNCLAIMED FREIGHT—STATUTORY RIGHT.

Sayles' Ann. Civ. St. 1897, art. 324, authorizing a carrier using due diligence to notify the consignee at destination to store the goods not taken by the consignee, and thereafter become liable only as warehousemen, does not authorize a sale by a carrier of unclaimed freight.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 891–900; Dec. Dig. § 197.*]

2. CARRIERS (§ 197*)—SALE OF UNCLAIMED FREIGHT—STATUTORY RIGHT.

Sayles' Ann. Civ. St. 1897, arts. 327, 328, authorizing a carrier to sell freight remaining unclaimed for three months on giving thirty days' notice, and article 324, authorizing a carrier using due diligence to notify the consignee to store freight not taken by the consignee and thereafter become liable only as warehousemen, are not in pari materia because they are enacted for different purposes and are independent of each other, and the right to sell unclaimed freight does not depend on whether the carrier used due diligence to notify the consignee of the arrival of the freight, but, though it be assumed that the statutes must be construed together, a consignor shipping freight to itself must put itself in position to receive notice of the arrival of the freight at destination, and where it fails to do so, the carrier need not

seek the consignee of the freight elsewhere to notify it of the arrival of the freight before making a sale of the freight remaining unclaimed for three months.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 891–900; Dec. Dig. § 197.*]

3. CARRIERS (§ 197*)—SALE OF UNCLAIMED FREIGHT—STATUTORY RIGHT.

Under Sayles' Ann. Civ. St. 1897, art. 327, authorizing a carrier to sell freight remaining unclaimed for three months and the owner, known or unknown, fails within that time to claim or pay the proper charges, a carrier may sell freight remaining unclaimed for three months, regardless of whether any charges are due thereon, and the owner of the freight cannot by payment of charges compel the carrier to keep the freight longer then three months.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 891–900; Dec. Dig. § 197.*]

4. CARRIERS (§ 197*)—SALE OF UNCLAIMED FREIGHT—STATUTORY RIGHT.

The statute does not direct the place of sale, and a sale may be had at a point other than the point of destination and an owner to avoid a sale at a place other than the point of destination must show that the place selected for the sale was unreasonable, and that he was probably injured by the sale being made there.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 891–900; Dec. Dig. § 197.*]

5. CARRIERS (§ 197*)—UNCLAIMED FREIGHT—RIGHT TO STORAGE CHARGES—STATUTORY PROVISIONS.

A carrier failing to comply with Sayles' Ann. Civ. St. 1897, art. 4520, providing that carriers shall not be allowed storage charges on freight unless notice is given, is not entitled to charges for storage of freight remaining unclaimed for three months, and then sold.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 891–900; Dec. Dig. § 197.*]

Appeal from Jefferson County Court; R. W. Wilson, Judge.

Action by the Patten Manufacturing Company against the Gulf, Colorado & Santa Fé Railway Company. From a judgment for plaintiff, defendant appeals. Reformed and affirmed.

Crook, Lord, Lawhon & Ney, of Beaumont, for appellant. Terry, Cavin & Mills, of Galveston, and F. J. & C. T. Duff, of Beaumont, for appellee.

PLEASANTS, C. J. This suit was brought by the appellee against the appellant to recover damages for the alleged conversion by appellant of freight shipped over its line by the Truxal-Painter Manufacturing Company, which company had assigned its claim to appellee.

Plaintiff's petition alleges that plaintiff is a corporation incorporated under the laws of the state of Tennessee, having its domicile at Chattanooga, Tenn.; that the defendant is a railroad corporation, owning and operating its lines of railway into and through the state of Texas; that on or about February 21, 1907, the Truxal-Painter Manufacturing Company shipped from Chattanooga, Tenn., one electric hoisting machine and outfit; that said machine and outfit was consigned to the Truxal-Painter Manufacturing Company at Beaumont, Tex.; that the defendant, Gulf, Colorado & Santa Fé Railway Company, received said shipment of freight and transported same to Beaumont, Tex., and that on or about September 1, 1907, while the freight was in its possession, and still the property of the Truxal-Painter Manufacturing Company, the defendant railroad negligently and unlawfully converted said property to its own use; that at the time of the conversion of said property it was of a reasonable market value of $550; that the Truxal-Painter Manufacturing Company · had sold and assigned all of its claims, rights, and interests in this cause of action to the plaintiff the Patten Manufacturing Company. Plaintiff prayed for damages in the sum of $550, with interest at the rate of 6 per cent. per annum from September 1, 1907. The defendant, Gulf, Colorado & Santa Fé Railway Company, answered first by general demurrer and second by general denial. A jury being waived, the cause was tried on an agreed statement of facts before the court, and on the 30th day of September, 1911, judgment was rendered in favor of plaintiff and against the defendant in the sum of $516.55, with interest at the rate of 6 per cent. per annum from the 14th day of October, 1907, making a total of $637.55, with interest from date of judgment.

The agreed statement of facts upon which the case was tried in the court below, after stating that the machinery described in plaintiff's petition was shipped from Chattanooga, Tenn., by the Truxal-Painter Manufacturing Company on February 21, 1907, freight prepaid, and consigned to the Truxal-Painter Manufacturing Company at Beaumont, Tex., and was received by appellant from its connecting carriers and transported by it to Beaumont, contains the following: "That said shipment of freight reached Beaumont, Tex., on the 14th day of March, 1907, and remained unclaimed by shipper and consignee at Beaumont, Tex., until June 29, 1907, when the same was shipped by defendant company to Galveston, Tex., and was sold at Galveston, Tex., on October 14, 1907, for the sum of $30.24. That at the time of the sale the defendant company held a claim for storage on said goods for the sum of $20.33; that said goods were shipped from Beaumont, Tex., to Galveston, Tex., and were sold by the defendant without the authority of the shipper and consignee, and without notice to it except as hereinafter stated. It is agreed that the Gulf, Colorado & Santa Fé Railway Company and its agents, upon the arrival of said shipment at Beaumont, Tex., endeavored to find and locate the Truxal-Painter Manufacturing Company in Beaumont, Tex., in order to give it notice of the arrival of said freight, but could not locate any such concern or agent of such company in Beaumont, Tex.; that said railway com-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

pany and its agents thought that possibly the name of the consignee was given wrong, and that its proper name was Texas Painter Manufacturing Company, and endeavored to locate some company or its agent by that name in Beaumont, Tex., but failing to locate in Beaumont, Tex., any such concern by that name, that said defendant railway company did not, before that sale, notify the shipper, Truxal-Painter Manufacturing Company, at Chattanooga, Tenn., that it held said freight at Beaumont, Tex., nor did it notify said Truxal-Painter Manufacturing Company that it intended to remove said property to Galveston, Tex., and sell same for charges, and the said Truxal-Painter Manufacturing Company did not learn of the sale of said shipment for charges until after the sale had been made. It is further agreed that before making the sale of said shipment that the defendant gave thirty days' notice of the time and place of sale, and a descriptive list of the package sold, with names and numbers or marks found thereon, which notice was given by posting same in three public places in Galveston county, Tex., and by posting a notice of said sale for thirty days prior thereto on the door of the depot or warehouse in Galveston, Tex., where the goods were sold, and that the defendant also gave at least thirty days' notice of said sale by making publication thereof in at least one newspaper in Galveston county, Tex., and that, in addition thereto, the defendant posted a notice of said sale for at least thirty days before same was made on the depot or warehouse door in Beaumont, Jefferson county, Tex., and that the defendant company has at all times since said sale held the sum of $9.91 subject to the order of the shipper or owner of said goods. It is further agreed that there was no market value for this machine and outfit in Beaumont, Tex., or Galveston, Tex., at the time of its receipt in Beaumont, Tex., and at the time of its removal and sale at Galveston, Tex., but that its actual or intrinsic value at said times and places was the sum of $490, the price it would cost in Chattanooga, Tenn., plus freight charges in transporting the same from Chattanooga, Tenn., to Beaumont, Tex., which was the sum of $26.50; that its market value at the times hereinbefore mentioned in Chattanooga, Tenn., was $490, and that Chattanooga, Tenn., was the nearest market for said machine and outfit. It is further agreed that since said shipment of goods was made that the Patten Manufacturing Company, plaintiff herein, purchased and took over from the Truxal-Painter Manufacturing Company all of its property and assets, including the claim of the value of the goods hereinbefore mentioned, against the Gulf, Colorado & Santa Fé Railway Company, and that the said Patten Manufacturing Company is now the legal owner and holder of said claim. It is agreed that all unclaimed freight and packages after being held for the statutory length of time at the various depots of the Gulf, Colorado & Santa Fé Railway Company is usually and customarily shipped to Galveston, and there offered for public sale at what is commonly termed 'The Old Hoss Sale'; that these goods were so shipped to Galveston, and there sold at public sale, after the giving of notices as hereinbefore set forth."

We shall not discuss the several assignments of error presented in appellant's brief in detail. The questions hereinafter discussed and decided are raised by appropriate assignments.

[1] We agree with appellant that article 324 of Sayles' Civil Statutes has no bearing upon the right of a railway company to sell unclaimed freight under the provisions of article 327 of said statutes. The article first mentioned is as follows: "If the carrier at the point of destination shall use due diligence to notify the consignee, and the goods are not taken by the consignee, and have in consequence to be stored in the depots or warehouses of the common carriers, they shall thereafter only be liable as warehousemen."

[2] The article authorizing the sale of unclaimed freight by a common carrier is as follows: "When any freight or baggage has been conveyed by a common carrier to any point in this state, and shall remain unclaimed for the space of three months at the office or depot nearest or most convenient to destination, and the owner, whether known or unknown, fails within that time to claim such freight or baggage, or to pay the proper charges if any there be against it, then it shall be lawful for such common carrier to sell such freight or baggage at public auction, offering each box, bale, trunk, valise or other article separately as consigned or checked." We do not think the two articles should be considered in pari materia, and construed together. They were enacted for different purposes, and are wholly independent of each other. The right given under article 327 to sell unclaimed freight is not made to depend upon whether the carrier has used due diligence to notify the consignee of the arrival of the freight, and the only notice required to authorize the sale is the 30 days' notice of the sale provided for in article 328, which it is agreed was strictly complied with by the appellant. If, however, the two articles be construed together and the right of appellant to sell the unclaimed freight depended upon whether it had used due diligence to notify the consignee of its arrival, the facts show that it used such diligence to find and notify the consignee at Beaumont, and only failed because the consignee was not there to receive the notice. From the identity of names it appears from the bill of lading that the consignor and consignee were the same, but appellant could not know

from this fact that the residence or domicile of the consignee was at Chattanooga, Tenn., and, if it had been charged with such notice, we do not think due diligence would have required it, in order to relieve itself of liability as a carrier, to notify the consignee at that place. It was the duty of the consignor who shipped the freight from Chattanooga, Tenn., to itself at Beaumont, Tex., to put itself in .position to receive notice of the arrival of the freight at Beaumont, Tex., and, having failed to do this, appellant was under no obligation to seek the consignee elsewhere in order to notify it of the arrival of the freight at Beaumont. Railway Co. v. Townes, 93 Ark. 430, 124 S. W. 1036, 26 L. R. A. (N. S.) 572.

[3] By the terms of article 327, before quoted, the carrier is given the right to sell freight when the owner fails to claim or pay the proper charges thereon within three months after it reaches its destination or the depot of the carrier nearest or most convenient to the place of destination. We think it clear from this article that, when freight is unclaimed for the space of three months, the carrier has the right to sell, regardless of whether any charges are due upon the freight. The owner of the freight cannot by payment of the freight and storage charges, if any are due, compel the carrier to keep the freight longer than three months, and, if at the expiration of that time the freight is unclaimed or not taken by the owner, the carrier is authorized to sell it.

[4] The statute does not direct where the sale shall be made, and there is no reason for requiring such sales to be made at the point of destination. Such requirement would often be to the disadvantage of the owner of the goods. It is to the interest of the carrier, as well as the owner, that the sale should be made at the place where the property would bring the best price, and in many cases this would not be at the point of destination. In any event, in order for the owner to avoid a sale made at a place other than the point of destination, it must be shown that the place selected for the sale was unreasonable, and the owner was probably injured by the sale being made at such place. No such contention is made in this case, and there is nothing in the facts from which it can be inferred that any injury resulted to appellee by reason of the sale having been made at Galveston instead of Beaumont. In the case of Slayden-Kirksey Woolen Mills v. Railway Co., 132 S. W. 77, the Court of Civil Appeals for the Third District holds that the carrier is not required under this statute to sell the property at the place of destination. We concur in the views expressed in that opinion.

It follows from these conclusions that there was no conversion of the property by appellant, and the trial court erred in holding that the appellee was entitled to recover the value of the property.

[5] The appellant was not entitled, however, to charge appellee for storage of the goods, because it did not comply with the provisions of article 4520 of the statute. This article is as follows: "Railroad companies shall in no case be allowed to charge storage upon freight received by them for delivery unless the owner or consignee thereof neglect to remove it from the depot of the company within three days after notice of its reception, which notice may be given by posting the same on the depot door, and after the expiration of such time the company may remove and store said freight at the expense of the owner or consignee and said freight shall be held liable for the freight and charges due thereon." The appellant having failed to post the notice required by this statute was not entitled to make any charge for the storage of the freight, and appellee was entitled to recover the entire amount realized from the sale of its property.

We think the judgment of the court below should be reformed so as to restrict appellee's recovery to the amount realized by appellant from the sale of the property, and as so reformed should be affirmed, and it has been so ordered.

Reformed and affirmed.