## TEXAS & N. O. RY. CO. v. PATTERSON & ROBERTS et al. (No. 1114.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 21, 1917.)

**1. CARRIERS** ⚏85—CARRIAGE OF GOODS—NOTICE OF ARRIVAL.

A railway company in discharge of its duties under Rev. St. 1911, art. 712, to give notice of arrival of freight at destination, is not bound to look for such person at any place other than that of destination.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 316–321.]

**2. CARRIERS** ⚏140—CARRIAGE OF GOODS—NOTICE OF ARRIVAL—SUFFICIENCY.

Where freight bill provided for notice of arrival to be given to a designated party, notice to such party was sufficient, and thereafter upon refusal to accept goods railroad company held property as warehouseman.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 609, 609½, 611–616.]

**3. TROVER AND CONVERSION** ⚏4—NATURE OF—"CONVERSION."

"Conversion" is an act of malfeasance and not of mere nonfeasance, and any distinct act of dominion wrongfully exerted over property is a "conversion."

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 25–37.

For other definitions, see Words and Phrases, First and Second Series, Conversion.]

**4. CARRIERS** ⚏89—STORAGE OF GOODS REFUSED BY CONSIGNEE.

Where consignee refused shipment of maize, railway company was not required to store same at place of destination, but was justified in removing it to the most convenient and suitable storage provided it held itself ready to deliver on demand.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 324–330.]

**5. EVIDENCE** ⚏591—SUFFICIENCY—CONCLUSIVENESS ON PARTY INTRODUCING IT.

Where plaintiff introduced in evidence the defendant's answer without limitation, and this was all the evidence offered on this phase of the case, plaintiffs were concluded thereby.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2440–2443.]

**6. CARRIERS** ⚏89—CARRIAGE OF GOODS—"CONVERSION"—EVIDENCE.

Where plaintiff's shipment of maize was refused by consignee and railway company shipped to another place and stored it without plaintiff's knowledge or consent, the railway company's action held not "conversion."

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 324–330.]

**7. CARRIERS** ⚏94(4)—CONVERSION BY—DAMAGES.

The measure of damages for conversion of goods by carrier is the value of such goods at the destination less legal transportation charges.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 388–395, 456.]

---

Appeal from Cottle County Court; W. O. Jones, Judge.

Suit by Patterson & Roberts against the Texas & New Orleans Railway Company and others. Judgment for plaintiffs, and defendant named appeals. Reversed and remanded.

D. E. Decker and J. A. Clarke, both of Quanah, and Baker, Botts, Parker '& Garwood, of Houston, for appellant. Bell & Bell and Hawkins & Sneed, all of Paducah, for appellees.

BOYCE, J. This suit was brought by the appellees Patterson and Roberts against Quanah, Acme & Pacific Railway Company, the Ft. Worth & Denver City Railway Company, and Texas & New Orleans Railway Company, carriers, participating in the transportation of a car of maize from Paducah, Tex., to Kleberg, in Dallas county, Tex., and also the Plano Grain & Hay Company, who had agreed to purchase said grain of the plaintiffs. It was alleged that the railway companies allowed said grain to become wet and damaged in the course of transportation, and that the Texas & New Orleans Railway Company thereafter converted the same, and the railway companies were sued for the value of said grain, and judgment was asked against the Plano Grain & Hay Company for the value thereof in the event it should be found that said company wrongfully refused to accept said grain under its contract of purchase with the plaintiffs. The court found that said grain was converted by the defendant Texas & New Orleans Railway Company by its removal to Dallas, Tex., under the circumstances hereinafter set out, and entered judgment for the plaintiffs against said railway company alone and in favor of the other defendants.

Patterson and Roberts having made a contract with the Plano Grain & Hay Company for the sale of a car of maize delivered f. o. b. the car at Paducah, at $14 per ton, to be shipped to Kleberg, Tex., loaded the maize into a car at Paducah, on May 10, 1915, and the initial carrier, Quanah, Acme & Pacific Railway Company, issued and delivered to the said Patterson and Roberts a bill of lading which shows that said car was "consigned to the order of Patterson & Roberts, destination Kleberg, state of Texas. Notify Plano Grain & Hay Company, at Kleberg." The said bill of lading provided that, if the property was not removed by the party entitled to receive it within 48 hours after notice of its arrival had been duly sent, it might be kept in the car, depot, or place of delivery of the carrier, or warehouse, subject to a reasonable charge for storage, or might, at the option of the carrier, be moved to and stored at a public or licensed warehouse at the cost of the owner, etc.

The said Patterson & Roberts attached the bill of lading to a draft on the Plano Grain & Hay Company for $304.50, the value of the maize loaded at $14 per ton. Payment of this draft was refused because it was claimed that the maize was in a damaged condition on arrival at Kleberg, and the draft and bill of lading were returned to Patterson & Roberts; the date of its return not being shown. The Texas & New Orleans Railway Company, the terminal carrier, some time after the arrival of the car at Kleberg, shipped it back to Dallas, and had the maize unloaded in Haughton's warehouse at Dallas, Tex.; the exact date of this unloading not being shown. The plaintiff Patterson testified that the plaintiffs did not consent to the car being moved to Dallas; that the railway agent at Paducah phoned him, "some several weeks after the maize had been shipped," that the maize had been shipped back to Dallas, but did not tell him where it was in Dallas, and said "that he did not know where it was unloaded there. We tried to locate the maize, but couldn't. We never did know where the maize was until about the 1st day of October, 1915." At this time said Patterson & Roberts received a letter from the general manager of the Quanah, Acme & Pacific Railway Company, advising them that maize had been unloaded in Haughton's warehouse at Dallas in public storage, and notifying them of the charges against the same. The record does not show what efforts the said Patterson & Roberts had made to locate the grain, except that on August 25th the attorneys for the said Patterson & Roberts had written the agent of the Texas & New Orleans Railway Company at Kleberg, to which letter said agent replied on August 26th that the grain, after it had been refused by the Plano Grain & Hay Company, had been shipped to the agent of the Texas & New Orleans Railway Company at Dallas. Plaintiff also introduced in evidence, without limitation, the answer of the defendant Texas & New Orleans Railway Company, in which it was stated that said railway company had handled the grain from Dallas to Kleberg and tendered delivery to plaintiffs, and the Plano Grain & Hay Company, as directed by plaintiffs, and which further contained the following statement:

"That both plaintiff and Plano Grain & Hay Company refused to accept said car of maize and still refuses to accept same, although often requested, and it became necessary for this defendant to unload and store said grain in Haughton's warehouse in Dallas county, Tex., in the city of Dallas; the same being the most suitable and cheapest storage place accessible."

It is not shown that the plaintiffs had ever made any demand for the delivery of the grain, or that said delivery was refused by the defendants. It was agreed that the storage charges due for storing the grain in Haughton's warehouse at Dallas were reasonable, and that said grain was at the time of the trial still in said warehouse, and was rapidly deteriorating in value.

The court found that the grain had been damaged in the course of transportation, but

the evidence was not sufficient to show the amount of damage, and that the Plano Grain & Hay Company was justified in refusing to accept said grain, because it was damaged, and that after said maize reached Kleberg it was shipped back to Dallas and there unloaded in Haughton's warehouse, and that the plaintiffs, Patterson & Roberts, did not know of its whereabouts until about October 1, 1915. The court also found as a matter of fact and as a matter of law:

"That the acts done by the defendant, Texas & New Orleans Railway Company, in shipping the car of maize back to Dallas, Tex., without the consent and knowledge of plaintiffs and without giving them any notice of the arrival of the maize at Kleberg, or its whereabouts at Dallas, Tex., was conversion of the said maize by the said defendant, and that the said defendant is responsible for the value of said maize, in the sum of $304.50."

In the foregoing statement we have quoted the evidence most favorable to the conclusion of the court as above announced, disregarding the conflicting evidence offered by the defendants to show that notice was given to the plaintiffs and that they refused to make any order for the disposition of said car before it was shipped back to Dallas for storage, as the principal question of this appeal is as to whether the facts as we have detailed them are sufficient to warrant the finding that the Texas & New Orleans Railway Company thereby converted the maize.

[1-3] It has been held that a railway company in discharge of the diligence required of it to give notice to the owner of freight upon arrival at destination, under Revised Statutes, art. 712, is not bound to look for such person at any place other than the place of destination, as it is the duty of the owner to put himself in position to receive such notice at such place. G., C. & S. F. Ry. Co. v. Patten Mfg. Co., 151 S. W. 1158; St. L., I. M. & S. Ry. Co. v. Townes, 93 Ark. 430, 124 S. W. 1036, 26 L. R. A. (N. S.) 572. Since the bill of lading in this case provided for notice to Plano Grain & Hay Company at Kleberg, Tex., we are inclined to the opinion that notice to said parties was sufficient under the law and the contract, and that thereafter the railway company held the grain as warehousemen. But the question as to whether the grain was held on the one liability or the other, or as to whether the railway company was negligent in not notifying consignees elsewhere, may not, under the authorities hereinafter cited, be important in determining whether there was a conversion; for, "a conversion is an act of malfeasance—not a mere nonfeasance—a positive wrong, and not the mere omission of what was right." The act of conversion here, if any, was, in the removal of the property to Dallas without the knowledge or consent of the plaintiffs. There are numerous definitions of "conversion" to be found in the authorities. That given by Cooley on Torts (7th Ed.) p. 524, states a very generally accepted definition thus:

"Any distinct act of dominion wrongfully exerted over one's property in denial of his right, or in conflict with it, is a conversion." Words and Phrases, First Series, vol. 2, pp. 1562–1566; Second Series, vol. 1, pp. 1030–1032; Crawford v. Thomason, 53 Tex. Civ. App. 561, 117 S. W. 183; Slayden-Kirksey Woolen Mills Co. v. H. & T. C. Ry. Co, 132 S. W. 77; Cyc. vol. 38, p. 2004 et seq.

[4, 5] Was the act of the railway company, in removing the property to Dallas, under the circumstances wrongful? Neither the contract nor the statutes provide expressly that the railway company, after the transportation has been completed and it has been unable to make delivery of the property, is required to store it at the depot or a warehouse at the place of destination. In many cases, readily conceivable, this would be impracticable, on account of the class or character of the property and facilities for handling or storing the same at the point of destination, and we are of the opinion that under such circumstances the railway company would be justified in removing the property to the most convenient and suitable place for safe-keeping and storage; provided, of course, it held itself in readiness to deliver the property on demand of the consignee. This view is supported to a certain extent by the cases holding that in the event of ultimate sale of unclaimed property such property may be removed to and sold at some place other than destination. G., C. & S. F. Ry. Co. v. Patten Mfg. Co., 151 S. W. 1158; Slayden-Kirksey Woolen Mills Co. v. H. & T. C. Ry. Co., 132 S. W. 77. The appellee asserts that there is no evidence that the property was taken to Dallas for storage, etc. We do not assent to this, however. Plaintiffs introduced in evidence the answer of the defendant Texas & New Orleans Railway Company without limitation, and such answer contained the statements of facts above quoted. This is all of the evidence on this phase of the case, and we believe the plaintiffs, "having made the statements of his adversary evidence," are "concluded by them." Baker v. Cook, 13 Tex. 80.

[6] The result of the testimony, most favorably considered for the plaintiffs, is that for a considerable length of time they could not ascertain where their property was, but they did know where it was prior to the time of the suit, and there was never any demand and refusal of delivery. Whatever may be the liability of the defendant for negligence, in the transportation of the grain or in failing to answer the plaintiffs' inquiry or give information as to the location of the property, we do not believe that the act of removing the grain to Dallas for storage, under the circumstances above detailed, is such an exercise of dominion over the property and denial of plaintiffs' rights as would justify the conclusion that the grain was thereby converted and that plaintiffs are entitled to recover full value thereof. St. L. & S. W. Ry. Co. v. Tyler Coffin Co., 81 S. W. 827; Direct

Navigation Co. v. Davidson, 32 Tex. Civ. App. 492, 74 S. W. 790; Davis v. T. C. Ry. Co., 133 S. W. 297; Staley v. Colony Union Gin Co., 163 S. W. 381; G., C. & S. F. Ry. Co. v. Humphries, 4 Tex. Civ. App. 333, 23 S. W. 556; Hutchinson on Carriers, § 1372; Shea v. Millford, 145 Mass. 525, 14 N. E. 769; Sparks v. Purdy, 11 Mo. 218.

[7] The measure of damage for conversion would be the value of the grain at destination, less the legal transportation charges. Hutchinson on. Carriers, § 1375; M., K. & T. Ry. Co. v. Rines, 37 Tex. Civ. App. 618, 84 S. W. 1092; Carter & Corey v. I. & G. N. Ry. Co., 93 S. W. 681. We say this for the information of the lower court on another trial, in the event the issue of conversion shall be again before the court, as the court seems to have applied a different rule on the former trial.

The case is reversed and remanded for a new trial.