[No. 14374. Department One. April 18, 1918.]

## A. Rosenbaum, *Respondent,* v. Northern Pacific Railway Company, *Appellant.*[1]

Carriers—Arrival of Shipment—Notice to Consignee. One who consigns perishable goods to himself at a place where he does not reside and has no representative or place of business cannot complain of the failure of the carrier to notify him of the arrival of the goods.

Same—Arrival of Shipment—Notice to Agent. Where a shipper of a car of apples, consigned to himself, arranged that they be stopped at a place where he had no place of business and received by T., a buyer, who was to take up the bill of lading, T. was the agent of the consignor for the purpose of receiving notice of arrival, and actual notice and inspection by T. relieves the carrier from giving notice to the consignor.

Same—Duty as Warehouseman. After actual notice, given to the consignor's agent for that purpose, of the arrival in good condition of a car of apples, the carrier's liability is that of a warehouseman, and is discharged by the exercise of reasonable care in protecting the fruit from loss or damage.

Appeal from a judgment of the superior court for Franklin county, Truax, J., entered April 13, 1917, upon the verdict of a jury rendered in favor of the plaintiff, in an action to recover from a carrier for the loss of goods. Reversed.

*Cannon & Ferris* and *E. A. Davis,* for appellant.
*Charles W. Johnson,* for respondent.

Webster, J. — On December 9, 1916, respondent brought this action, alleging in substance, that, on

[1]Reported in 172 Pac. 238.

October 8, 1915, a car load of apples was delivered by
C. A. Rosenbaum to the appellant at Monte, Washing-
ton, to be shipped to Crosby, North Dakota; that the
appellant accepted the shipment and charged the reg-
ular freight rate thereon; that it failed to deliver the
same, and failed and neglected to properly care for the
shipment, which consisted of perishable fruit, and by
reason thereof the goods were lost to the shipper; that
the value of the apples was $795.20, and that the ship-
per's claim for such loss had been assigned to A.
Rosenbaum, the plaintiff in the action. Judgment was
prayed for in the sum of $795.20, with interest from
October 8, 1915.

The appellant answered, in substance, that the ship-
ment was received, denying all other material allega-
tions of the complaint. As an affirmative defense, it
further pleaded that the shipment was moved to Ken-
mare, North Dakota, where it arrived in good condi-
tion on October 15, 1915, billed to C. A. Rosenbaum;
that said Rosenbaum did not, nor did any one else, ac-
cept delivery of the car or call to inspect the same,
though the connecting carrier at that point used due
and every endeavor to locate the consignee, the owner
of the apples, or his agent; that, on or about October
24, 1915, while the apples were in perfect condition, one
G. S. Trimble, who then claimed to be the owner of the
shipment, examined and inspected the same and found
it in perfect condition, but refused to take the car or
dispose of the shipment; that, on December 12, 1915,
the connecting carrier was required to dispose of the
car of apples to best advantage, receiving therefor the
sum of $650, which, after deducting freight charges and
demurrage charges, left a balance of $129.54, the
amount tendered into court for the benefit of the ship-
per, and that the loss, if any, was due solely to the
negligent acts and omissions of C. A. Rosenbaum and

his agents, and not to any fault of the defendant or its connecting carrier. The reply traversed the allegations of the affirmative answer.

The cause was tried to a jury. At the conclusion of the plaintiff's case, and at the conclusion of the entire case, the defendant's challenge to the sufficiency of the evidence and its motions for nonsuit and directed verdict in its favor were overruled by the court. Thereafter a verdict in plaintiff's favor for the full amount claimed was rendered, and from an order overruling a motion for a new trial and from the judgment entered on the verdict, the defendant appeals.

Errors are assigned upon the rulings of the trial court in overruling the motions for nonsuit and for judgment in defendant's favor, in overruling its motion for new trial and entering judgment for plaintiff, also in giving certain instructions to the jury. In view of the conclusion we have reached as to the disposition of the case, it will not be necessary to discuss the class of errors last mentioned.

The controlling facts, which are not disputed, are these: The apples were delivered to appellant at Monte, Washington, consigned to C. A. Rosenbaum, the shipper, at Crosby, North Dakota, the bill of lading, however, containing the following notation, "Stop at Kenmare, N. D. for partial unloading." The shipment moved over the lines of appellant and its connecting carrier to Kenmare, North Dakota, arriving at that point on October 15, 1915. The consignor, through the Central Bank of Toppenish, Washington, forwarded the bill of lading with sight draft attached in the sum of $700 to the First National Bank of Kenmare, North Dakota, with instructions to deliver the bill of lading to G. S. Trimble upon the payment of the draft by him. Upon the arrival of the apples at Kenmare, the carrier's agent, not being acquainted with

any C. A. Rosenbaum at that point, endeavored to locate such person, but was unable to do so. It is admitted that the consignor, who was also the consignee of the shipment, was not at Kenmare or Crosby between October 8, 1915, and December 14, 1915, to receive the apples, did not have any place of business at either point, and had made no arrangements with any one to accept or receive the same, other than the arrangement with G. S. Trimble hereinafter referred to; neither did he at any time instruct the agent of the carrier at Kenmare to forward the shipment to its ultimate destination at Crosby, North Dakota. Prior to the shipment of the apples, the consignor had arranged with Trimble to be at Kenmare and receive the shipment. The record in this respect discloses,

"Q. Now, you heard the admission as to the condition of the apples and the value of them. They were shipped to the order of C. A. Rosenbaum. In the bill of lading there is a statement that they were to stop at Kenmare, North Dakota, for partial unloading. Did you have any one at Kenmare that was planning on buying these apples and taking a part of them out at Kenmare? A. Yes, sir; there was a man there that was to take them there. Q. What arrangement did you make for payment for them, should he take them at Kenmare, North Dakota? A. There was a draft attached to the bill of lading, and if he paid the draft, the apples were to be his own."

The party referred to in this testimony was G. S. Trimble. Shortly after the arrival of the shipment at Kenmare, upon being unable to locate C. A. Rosenbaum at that point, the agent of the carrier, knowing that G. S. Trimble was receiving apples and disposing of them there, took up with him the matter of whether he was interested in the Rosenbaum shipment. In reply to the inquiry, Trimble said that he would take care of the car, and that there was a draft at the First

National Bank of Kenmare with the bill of lading attached. On October 24, 1915, in company with the carrier's agent, Trimble inspected the car of apples, and upon the subject of his arrangement with C. A. Rosenbaum, the record shows he testified as follows,

"Q. And the understanding was that he would bill it back to you and you would take it up and dispose of it? A. Yes, sir, I told him I would try to."

Trimble made several attempts to sell the apples to merchants at Kenmare, and not being able to dispose of them at that point, had the bank at Kenmare request permission of the shipper to divert the car to Thief River Falls, North Dakota, where Trimble expected to dispose of them. That the consignor had knowledge that the shipment had arrived at Kenmare and was being held at that point by the carrier pending negotiations with Trimble with reference to its disposal is conclusively established by the following correspondence:

"First Natl. Bank,            Seattle, Wn. Nov. 9-15.
    "Kenmare, N. D.
    "Gentlemen:  Some time ago the Central Bank at Toppenish, Wn. sent you sight draft for $700 with bill of lading attached. Draft to be paid by G. S. Trimble of Toppenish. Bill of lading for carload of apples. Up to date have not heard anything regarding the covering of this draft. Has Mr. Trimble been at the bank to make arrangements for the same? Draft was sent about four weeks ago. Any information will be appreciated.        Yours truly,
                    "C. A. Rosenbaum.
"Address No. 16 West Mercer St.,
    "Seattle, Washington."

        "First National Bank, Kenmare, North Dakota,
"Mr. C. A. Rosenbaum,            Nov. 16, 1915.
    "16 West Mercer St.,
        "Seattle, Wash.
    "Dear Sir:  In reply to your letter of the 9th, I beg to advise that I talked with Mr. Trimble this morning

regarding the bill of lading of $700 and he stated that he wanted permission to have this car transferred from here to Thief River Falls. He further stated that he would take same up very soon. Will you kindly advise if this will be satisfactory?

"Yours very truly,

"G. A. Trzcinski, Ass't. Cashier."

"First Nat. Bank,          Seattle, Wn., Nov. 19-15.

"Kenmare, N. D.

"Gentlemen: Your letter at hand, in reply will say that when Mr. Trimble pays draft of $700 attached to bill of lading, then the apples are his and he may ship wherever he wishes. Hope this meets with approval and that we have an early settlement.

"Yours truly,

"No. 16 W. Mercer St.          C. A. Rosenbaum."

"Ft. Agt.          Seattle, Wash. Nov. 19-15.

"Toppenish, Wn.

"Dear Sir: About Oct. 8-15—I had a carload of apples billed from Monte to Crosby, N. D. Car No. 95319 with sight draft attached to bill of lading. Clause also on bill for a stop at Kenmare N. D. for partial unloading. Up to date have not heard from it. Would like to know if it has been accepted and unloaded.

"Address 16 W. Mercer St.          Yours very truly,

"Seattle, Wn.          C. A. Rosenbaum."

The shipment remained at Kenmare without further instructions from the consignor as to its disposition until about December 15, 1915, when it was sold by the carrier to prevent damage and loss from freezing.

Respondent predicates his right of recovery upon the failure of the carrier to notify him or his assignor of the arrival of the apples at Kenmare, and the failure to properly care for the shipment after its arrival.

The law seems to be well settled that one who delivers property to a carrier, consigned to himself at a place where he does not reside and has no representatives or place of business, is bound to put himself in a position to receive the notice; and failing to do so,

cannot be heard to complain that notice was not given. *St. Louis, I. M. & S. R. Co. v. Townes,* 93 Ark. 430, 124 S. W. 1036, 26 L. R. A. (N. S.) 572; *Pelton v. Rensselaer & Saratoga R. Co.,* 54 N. Y. 214, 13 Am. Rep. 568; *Adams Express Co. v. Darnell,* 31 Ind. 20, 99 Am. Dec. 582; *Alabama & Tenn. Rivers R. Co. v. Kidd,* 35 Ala. 209; *Mobile & Girard R. Co. v. Prewitt,* 46 Ala. 63, 7 Am. Rep. 586; *Northrop v. Syracuse etc. R. Co.,* 5 Abb. Pr. (N. S.) 425; *Clendaniel v. Tuckerman,* 17 Barb. (N. Y.) 184; 2 Hutchinson, Carriers (3d ed.), § 723; 1 Moore, Carriers (2d ed.), § 10.

In *St. Louis, I. M. & S. R. Co. v. Townes, supra,* a case very similar to the one in hand, Chief Justice McCulloch, speaking for the supreme court of Arkansas, said:

"As the company was required by the terms of the contract to give him notice of the arrival of the cars at Texarkana, there was a corresponding duty devolving on him to put himself in position to receive the notice, so that the same would be available. Any attempt to give him notice at Texarkana would have proved fruitless, for he was not there to receive it; and before he can complain at the failure of the company to comply with the contract by giving him the notice, he must have first performed the contract impliedly imposed on him to put himself in position to receive the notice. He cannot complain when he has failed to perform his part of the contract, for, when he failed to make arrangements for the carrier to give him notice, he impliedly agreed for the latter to hold the goods until the bills of lading were presented by some one. This is what the law required the carrier to do, and he could expect nothing more.

" 'It is the duty of the consignee,' says Mr. Hutchinson, 'to be on hand and ready to receive the goods. He cannot absent himself, and thus put it out of the power of the carrier to make a delivery to him, and hold him during his absence to the extraordinary care of the goods required of the carrier. If, therefore, he

be absent when the carrier is ready to deliver the goods and has left no agent known to the carrier to whom delivery can be made for him, or to whom notice can be given of their arrival, the carrier becomes at once a mere warehouseman of the goods.' 2 Hutchinson on Carriers, § 723.

"The Supreme Court of Indiana, speaking on this subject, said: 'The doctrine that the carrier's duty to deliver and the consignee's duty to receive are reciprocal, and that each must be maintained, is approved by the plainest considerations of justice, and is necessary to prevent wrong and imposition.' *Adams Exp. Co. v. Darnell,* 31 Ind. 20, 99 Am. Dec. 582. The above quotations are taken from discussions of the general question as to when liability as a carrier ceases and that of a warehouseman begins; but the principle is the same in determining the question of liability of the carrier for failing to give notice, where damages are alleged to have resulted from such delay."

In *Normile v. Northern Pac. R. Co.,* 36 Wash. 21, 77 Pac. 1087, 67 L. R. A. 271, we held that, in the absence of information or instructions to the contrary, the agent of the carrier has the right to assume that notice addressed to the consignee at the point of destination would reach him in the due course of mail. It is apparent that a letter addressed to Rosenbaum either at Kenmare or Crosby would have served no purpose, as he was not at either place. As said in the *Townes* case, *supra,* "Any attempt to give him notice at Texarkana would have proved fruitless, for he was not there to receive it." The failure, therefore, to mail such letter was wholly without significance.

Moreover, in view of the arrangement between Rosenbaum and Trimble, the latter must be treated as the agent of the former for the purpose of receiving notice that the apples had arrived at Kenmare. Rosenbaum knew that Trimble was to be at Kenmare to receive the apples, and this was the reason for indorsing

on the bill of lading the notation, "Stop at Kenmare, N. D. for partial unloading." The bill of lading with draft attached was forwarded to the bank at Kenmare with instructions to deliver the bill of lading to Trimble upon the payment of the draft. Trimble had knowledge of the arrival of the apples but failed to take up the draft. At the time of receiving this information the apples were in good condition, and it is not contended to the contrary. No claim is made that Trimble's failure to accept the apples was due to their damaged condition. Furthermore, it was not necessary for the carrier to notify the shipper of the arrival of the apples at Kenmare if he had actual knowledge of such fact. *Normile v. Northern Pac. R. Co., supra*; 1 Moore, Carriers (2d ed.), § 10, and cases cited.

From the correspondence set forth at length herein, there is no room for difference in the minds of reasonable men that, as early as November 19, 1915, at least, the consignee knew the car was at Kenmare and that Trimble was seeking his permission to divert it to Thief River Falls. With this information in his possession, Rosenbaum could easily have given the agent at Kenmare such instructions with reference to the disposition of the apples as he saw fit, but having failed to give any such directions, it would be unconscionable and unjust thereafter to hold the carrier to its extraordinary liability as an insurer of the merchandise. The carrier exercised reasonable care in protecting the fruit from loss or damage, which discharged the full measure of its duty as a warehouseman. It is not contended that it was not necessary for the carrier to dispose of the apples to prevent loss by freezing, nor that in so doing it failed in its duty to secure the best price obtainable, plaintiff's case being based entirely upon the failure of the carrier to give notice to the consignee of the arrival of the goods at

Kenmare. The defendant having paid into the registry of the court the proceeds derived from the sale, less freight and demurrage charges, the plaintiff's recovery must be limited to that amount.

The judgment will be reversed, and the cause remanded with direction to enter judgment in favor of the plaintiff for the sum of $129.54, together with costs incurred in the superior court. Appellant will recover costs in this court.

ELLIS, C. J., FULLERTON, MAIN, and PARKER, JJ., concur.